UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In reply to:

| | |
|---|---|
| KOLLEL MATEH EFRAIM, LLC, | Chapter 11 |
|        Debtor. | Case No. 04-16410SMB) |

----------------------------------------------------------X
KOLLEL MATEH EFRAIM, LLC, a/k/a
MATEH EPHRAIM LLC,

               Plaintiff,                   Adv. Pro. No. 04-545 (SMB)

     -against-

HELEN-MAY HOLDINGS, LLC, and
IRENE GRIFFIN,

               Defendants.
----------------------------------------------------------X

**DEFENDANTS' NOTICE OF MOTION
FOR SUMMARY JUDGMENT DISMISSING
ADVERSARY PROCEEDING COMPLAINT**

S I R :

       PLEASE TAKE NOTICE that upon the following papers:

       (1)     Defendants' Local Rule 7056-1(b) Statement of Material Facts as to which there is no Genuine Issue to be Tried;

       (2)     Adversary Proceeding Complaint;

       (3)     Adversary Proceeding Answer;

       (4)     Affidavit of Paul Griffin with the following exhibits:

           (A)     Contract dated April 29, 2004 between Helen-May Holdings, LLC and Aron Fixler;

           (B)     Assignment of Contract dated May 18, 2004 – Fixler to Kolel Mateh Efraim;

           (C)     Kollel request for adjournment of the closing dated May 28, 2004;

           (D)     Letter-agreement dated June 3, 2004, adjourning closing to September 27, 2004 and permitting interim occupancy by Kollel;

    (E)    Letter-agreement dated September 22, 2004, further adjourning closing to November 29, 2004 and continuing interim occupancy by Kollel;

    (F)    Kollel's stop-payment of check letter of September 29, 2004 and copy of $30,000 check to Helen-May marked "payment stopped";

    (G)    Deed, Naim Saiti & Fahrije Saiti to Kollel Mateh Efraim LLC, executed on June 23, 2004 and recorded in the Sullivan County Clerk's Office on July 1, 2004;

    (H)    Deed, Nazmi Havolli & Shpresa Havolli to Kollel Mateh Efraim LLC executed on June 23, 2004 and recorded in the Sullivan County Clerk's Office on July 1, 2004;

    (I)    Letter-agreement dated June 28, 2004, Eustance & Horowitz, PC, Surveyors with Jack Lefkowitz, Kollel's lawyer;

(5)    Plaintiff's Memorandum of Law (separate document),

the adversary proceeding defendants Helen-May Holdings, LLC and Irene Griffin will move this Court at a hearing to be held on June 28, 2005, at 10:00 AM before US Bankruptcy Judge Stuart M. Bernstein at the US Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, NY 10004-1408, for an order granting a summary judgment dismissing the plaintiff debtor's adversary proceeding complaint, with costs and disbursements.

    PLEASE TAKE FURTHER NOTICE that opposing papers are to be served so as to be physically delivered to the office of the undersigned at least ten (10) days prior to the return date hereof.

Dated: Liberty, New York
       June 1, 2005

                              Yours, etc.
                              ORSECK LAW OFFICES
                              By: /s/ Gerald Orseck
                                  Gerald Orseck (GO 9913)
                              Attorneys for Adversary Proceeding Defts.
                              1924 State Route 52, PO Box 469
                              Liberty, New York 12754
                              Tel.: (845) 292-5800

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
**In reply to:**

| | |
|---|---|
| **KOLLEL MATEH EFRAIM, LLC,** | **Chapter 11** |
| Debtor | Case #04-16410(SMB) |

-------------------------------------------------------------X
**KOLLEL MATEH EFRAIM, LLC, a/k/a**
**MATEH EPHRAIM LLC,**

           Plaintiff,           Adv. Pro. No. 04-545 (SMB)

   -against-

**HELEN-MAY HOLDINGS, LLC, and**
**IRENE GRIFFIN,**

           Defendants.
-------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT DISMISSING COMPLAINT**

      **A.**      **INTRODUCTORY STATEMENT**

This is an action by the debtor as plaintiff seeking various grounds of relief predicated upon its claims that the defendant fraudulently misrepresented the number of acres in a real estate contract wherein the plaintiff agreed to purchase a resort hotel in Sullivan County. Defendant moves to dismiss the complaint upon summary judgment.

      **B.**      **ISSUES TO BE DETERMINED**

Should the complaint be dismissed upon summary judgment because

    (a)    the correct acreage appeared within the four corners of the complaint;

    (b)    plaintiff inspected the prior property prior to closing; plaintiff specifically disclaimed inducement or reliance upon any statements or writings made by the defendant other than those contained in the contract;

    (c)    the contract provided for a bulk sale of property and not a sale predicated upon acreage?

Has defendant shown there are no factual issues as to any one or more of the above and so should defendant be granted a summary judgment dismissing the complaint?

## C.    STATEMENT OF FACTS

The debtor plaintiff Kollel Mateh Efraim, LLC (hereafter "Kollel") is the assignee of one Aron Fixler of a contract to purchase a resort property in Sullivan County known as the Meadows Resort. The seller defendant is Helen-May Holdings, LLC (hereafter "Helen-May"). The contract was executed on April 29, 2004. It provided for a $1.4 million purchase price, and for a June 1, 2004 closing. (Contract, Exh A).

In paragraph 46 of the contract rider, the purchaser acknowledged that

> "Seller makes no representations as (sic) the actual land area or acreage of the premises conveyed and which is more particularly described in Schedule "A"."

In paragraph 5.02 of the main body of the contract, purchaser also acknowledged that:

> "Before entering into this Contract, Purchaser has made such examination of the premises…and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or … any other person representing or purporting to represent Seller, which are not expressly set forth in this Contract, whether or not any such representations were made in writing or orally."

In paragraph 25 of the contract rider, the Purchaser re-acknowledged in the strongest possible terms[1] the specific disclaimers previously set forth in paragraph 5.02, also repeating that the premises had been inspected by the Purchaser, were to be conveyed "as is", and further acknowledged that no representation had been made with respect to feasibility of any particular use of the premises.

In paragraph 27 of the contract rider, Purchaser acknowledged for the third time that it agreed to take the premises "as is".

On May 18, 2004, Aron Fixler, as purchaser, assigned the contract to Kollel. (Exh B).

On May 28, 2004, on the eve of the June 1 closing date, Kollel's attorney requested "an adjournment of the closing date until sometime after the summer, preferably at the end of September." (Exh C). The agreement was effectuated by letter-agreement of June 3, 2004. (Exh D). The letter-agreement *inter alia* provided (a) for occupancy of the premises by Kollel for additional consideration; (b) an adjourned closing date of September 27, 2004, time being of the essence, and (c) that "[a]ll issues surrounding the condition of the property which may be raised at the closing are hereby waived and may not be raised in the future". (Exh D).

On the eve of the September 27 closing date, Kollel again requested an adjournment of the closing date. A further adjournment to November 29, 2004 was

---

[1] "This contract, as written, contains all the terms of the contract…and the Purchaser acknowledges that the seller has made no representations, is unwilling to make any representations…and the seller is not liable or bound in any manner by…guarantees, promises, statements, representations or information pertaining to the said premises…including but not limited to any matter or thing affecting or relating to the said premises, except as herein specifically set forth." (Exh A ¶ 25).

3

effectuated by letter-agreement of September 22, 2004. (Exh E).  Pursuant to the terms of that letter-agreement, Kollel delivered a $30,000 check of one Markil El-Dal Inc. to Helen-May on September 27, 2004.  Kollel caused a "stop-payment order" to issue, and the check was returned unpaid.  Kollel's lawyer wrote to Helen-May's lawyer on September 29, 2004, stating that his client stopped payment on the check because he was shocked to learn on September 28, that while the Meadows Resort property was represented to consist of 77 acres, "the actual area of the parcel is only a fraction above 60 acres". (Exh F [stop payment check and letter]).

Schedule "A" to the main contract of April 29, 2004 (Exh A) is a metes and bounds description of the subject property. (see Contract, Exh A, Schedule "A").  Two lots constitute the subject premises and are described therein.  The first lot (consisting of two parcels) is described as "containing 20 acres of land, being the same more or less".  The second parcel is described as "containing 50 acres of land, more or less. EXCEPTING AND RESERVING therefrom all that part of the same lot being 10 acres, more or less, heretofore conveyed…"

50 acres plus 20 acres minus 10 acres equals 60 acres.

On October 4, 2004, Kollel filed its Chapter 11 case in this Court, and on November 15, 2004 commenced the instant adversary proceeding.  Kollel contends in its instant complaint that Helen-May misrepresented that the premises to be conveyed consist of 77 acres, whereas such premises consist of only 60 acres.  On the basis of this contention, Kollel alleges causes of action as follows:

First Claim:	Fraud.  Relief sought – reduction in purchase price.

4

| | |
|---|---|
| Second Claim: | Fraud. Relief sought – reduction in purchase price by way of damages (does not appear to be different from first claim). |
| Third Claim: | Fraud. Relief sought – rescission, money damages. |
| Fourth Claim: | Mutual Mistake. Relief sought – reduction in purchase price. |
| Fifth Claim: | Breach of Contract. Relief sought – money damages. |
| Sixth Claim: | Unjust Enrichment. Relief sought – money damages. |
| Seventh Claim: | Declaratory Judgment. Relief sought – Kollel to be declared equitable owner and to impress a constructive trust upon the premises. |
| Eighth through Twelfth Claims: | Wrongful Interference with Kollel's Right to Possession. Relief sought – money damages. |

Kollel's claims of fraud are predicated upon the following:

(1)    Contract §1.01(a) states that the property to be conveyed is "particularly described in Schedule "A", and that Schedule "A" is "to include tax map *designation* (emph supp)"; the tax map itself, not physically included in the contract, indicates that the subject premises consist of 77 acres. (Complaint, Exh A ¶¶8-11).

(2)    A February 27, 2004 Phase I Environmental Report made by Middletown Environmental, Inc., environmental consultants and engineers indicated that the subject premises consist of 77 acres. (Complaint, Exh A ¶¶13-14).

(3)    Helen-May's marketing advertisements stated that the subject premises consisted of 77 acres. (Complaint, Exh A ¶15).

(4)    Helen-May's principal, at an undesignated time and place, "made similar representations concerning the quantity of acreage of the premises". (Complaint, Exh A ¶¶17-18).

5

(5) Helen-May's principal, at an undesignated time and place, refused to furnish Kollel with "what appeared to be a survey of the premises". (Complaint, Exh A ¶¶30-32).

Defendant now moves for summary judgment dismissing plaintiff's complaint in its entirety. The following argument is in accordance with settled summary judgment law. The court will grant a motion for summary judgment when the evidence, viewed in the light most favorable to the non-moving party, presents no genuine issue of material fact. *United States v. Diebold, Inc.,* 369 US 654, 655, 82 S.Ct. 993 (1962); *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F2d 147, 151 (2d Cir 1990). There is no material fact issue only when reasonable minds cannot differ as to the import of the evidence before the court. *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 250-51, 106 S.Ct. 2505, 2511 (1986); *Commander Oil Corp. v. Advance Food Service Equip.,* 991 F2d 49, 51 (2nd Cir 1993).

This summary judgment motion is predicated upon documentary evidence. Although denied in the real world, all of plaintiff's allegations and proofs in this case are nevertheless assumed to be true and are "viewed in the light most favorable to the non-moving party".

D. ARGUMENT

POINT I

**KOLLEL HAD THE MEANS AVAILABLE TO KNOW, BY THE EXERCISE OF ORDINARY INTELLIGENCE, THE TRUTH CONCERNING THE ACREAGE OF THE SUBJECT PREMISES. HAVING FAILED TO MAKE USE OF SUCH MEANS, KOLLEL CANNOT BE HEARD TO COMPLAIN THAT IT WAS INDUCED TO ENTER INTO THE PURCHASE CONTRACT BY MISREPRESENTATION.**

6

>*Bennett v. Citicorp Mortgage Inc.,* 8 AD3d 1050, 778 NYS2d 806 (4th Dept 2004);
>*Mosca v. Kiner,* 277 AD2d 937, 716 NYS2d 543 (4th Dept 2000);
>*Kurz v. Nicolo,* 125 AD2d 993, 510 NYS2d 390 (4th Dept 1986).

In *Kurz*, plaintiff claimed that defendant misrepresented the boundaries of the property to be conveyed; that a portion of the property had been appropriated by the State to widen an adjacent highway. However, at the time the contract was signed, defendant gave plaintiff a prior deed containing a description excepting the portion appropriated by the State. A summary judgment dismissing the complaint was unanimously affirmed by the State appellate court. The State appellate court held that the plaintiff had the means of knowing, by exercise of ordinary intelligence, the truth concerning the description and boundary of the land, and that, in any event, the allegedly misrepresented facts were not within the sole knowledge of the defendant. *Kurz v. Nicolo,* supra.

The case at bar presents an even stronger argument for dismissal than did Kurz. Here, Schedule "A" to the contract itself is identified therein as "description of the premises to be conveyed." (Contract, Exh A). The subject premises includes two lots, the metes and bounds descriptions of which are set forth in Schedule "A". The Schedule "A" description states that the first lot consists of 50 acres, more or less, and the second lot consists of 20 acres, more or less, except for 10 acres thereof, leaving a balance of 60 acres.

"Ordinary intelligence" includes the ability to read the Schedule "A" metes and bounds descriptions, and to add 50 plus 20 and to subtract 10. Schedule "A" was part of the contract, not merely an additional document handed to Kollel's assignor at the time of the execution of the contract, as was the situation in the *Kurz* case.

7

And, as in *Bennett v. Citicorp Mortgage Inc. supra,* the description in this case "accurately sets forth the description and boundaries of the property". Even more compelling, the metes and bounds description in the case at bar also states the correct acreage constituting the subject premises. In *Bennett,* the accurate description of the property boundaries, even without a recitation of the correct acreage, entitled the seller to a summary judgment. Kollel cannot be heard to complain of misrepresentation as to quantity of acres. Kollel and its principals must be presumed to have possessed that "ordinary intelligence" necessary to read Schedule "A" to the contract, and to perform simple arithmetic to determine the acreage to be sold.

## POINT II

**ASSUMING THAT HELEN-MAY'S PRINCIPAL, GRIFFIN, MADE ORAL MISREPRESENTATIONS AS TO THE NUMBER OF ACRES TO BE CONVEYED, SPECIFIC DISCLAIMERS CONTAINED WITHIN THE AGREEMENT PROVIDE AN EFFECTIVE DEFENSE AGAINST ALLEGATIONS IN THE COMPLAINT WHICH ASSERT THAT THE AGREEMENT WAS EXECUTED IN RELIANCE UPON ORAL MISREPRESENTATIONS.**

**INDEED, THE CONTRACT CONTAINED A SPECIFIC DISCLAIMER BY THE PLAINTIFF OF ANY REPRESENTATION AS TO THE QUANTITY OF ACREAGE CONSTITUTING THE SUBJECT PREMISES.**

*Danann Realty Corp. v. Harris*, 5 NY2d 317, 184 NYS2d 599 (1959);
*Fitzgerald v. Hudson Nat. Golf Club,* 11 AD3d 426,
     783 NYS2d 615 (2nd Dept 2004);
*Mosca v. Kiner,* supra.

The last paragraph of the rider to the main contract (Exh A), providing:

> "¶46. Seller makes no representations as (sic) the actual land area or acreage of the premises conveyed and which is more particularly described in Schedule "A"."

8

This is as specific a disclaimer as can be. Kollel cannot be heard to argue that this disclaimer has no meaning.

Furthermore, in ¶5.02 of the main contract Kollel acknowledged that "before entering into this contract, Purchaser has made such examination of the premises…affecting or relating to this transaction as Purchaser deems necessary". Kollel also specifically disclaimed any reliance or inducement upon

> "any representations, warranties or statements…express or implied…which are not expressly set forth in this contract… whether or not…made in writing or orally."

In contract ¶¶25, 27, such disclaimers were repeated in broader and stronger language.[2] And, as in *Mosca v. Kiner,* supra, and as in *McManus v. Moise*, 262 AD2d 370, 371, 691 NYS2d 66 (2nd Dept 1999), the purchaser acknowledged that it had inspected the premises, and had agreed to take the premises "as is"; except here, Kollel agreed not once, but three times in separate contract paragraphs to take the premises "as is", to wit: ¶¶5.01, 25, 27. (Contract, Exh A).

The contract disclaimers in the subject contract, especially those set forth in contract rider ¶25, are far stronger than those in *Danann Realty Corp. v. Harris,* supra, where the Court of Appeals reinstated the trial court's summary judgment dismissing the complaint, stating:

> "[P]laintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded. Such a specific disclaimer destroys the allegations in plaintiff's complaint that the contract was executed in reliance upon those contrary oral representations." *Danann Realty, supra* at 320-321.

---

[2] See footnote 1, supra.

9

In the event Kollel argues that parol evidence is not a bar to proving fraud in the inducement, that rule simply does not apply in cases such as *Danann Realty, supra*, and the case at bar, which involve "specific disclaimers". The rule applies only to contracts which merely restate the parol evidence rule in what is referred to as a "merger clause", as in *Sabo v. Delman*, 3 NY2d 155 at 161, 164 NYS2d 714 (1957). In *Danann Realty, supra at 320-321*, the Court of Appeals made this distinction clear. The Second Circuit recognizes *Danann* as the controlling authority with respect to the subject matter. *Grumman Allied Industries v. Rohr*, 748 F2d 729 (2nd Cir 1984).

To conclude:

> "If the language here used is not sufficient to estop a party from claiming that he entered the contract because of fraudulent representations, then no language can accomplish that purpose. To hold otherwise would be to say that it is impossible for two businessmen dealing at arm's length to agree that the buyer is not buying in reliance on any representation of the seller as to a particular fact." *Danann Realty, supra at 323*.

### POINT III

**THE CONTRACT IN THIS CASE PROVIDES FOR
PURCHASE OF A RESORT HOTEL IN BULK,
AND NOT BY ACREAGE. ACCORDINGLY,
NO CREDIT FOR ANY DEFICIENCY IN ACREAGE
SHOULD BE ALLOWED IN ANY EVENT**

*Miesner v. Slaughter,* 1 AD2d 1042, 152 NYS2d 663 (2nd Dept 1956);
*Hunt v. Wall,* 211 App Div 856, 206 NYS 869 (2nd Dept 1924),
    affd 240 NY 696 (1925);
*Ireland v. Baylis*, 188 App Div 981, 176 NYS 904 (2nd Dept 1919)

The proofs in this case -- that the subject contract provided for the sale of a resort hotel in bulk -- are compelling and uncontroverted. The letter of intent, preceding the

10

contract, signed by Aron Fixler as original purchaser, described the property to be sold as:

> "Property's Description
> The Meadows
> 1141 CR 114
> Fosterdale, NY  12762"

The contract in this case mentions the word acre or acreage only in contract rider ¶46, wherein the purchaser acknowledges that the "Seller makes no representation as [to] the actual land area or acreage of the premises conveyed and which is more particularly described in Schedule "A." As shown in the Statement of Facts and Point I, supra, the contract Schedule "A" metes and bounds description, by arithmetic, states that subject premises consists of 60 acres, more or less.

Subsequently, in accordance with the June 3, 2004 letter-agreement, the closing date was extended. (Exh D). Kollel occupied the premises for at least four months thereafter. The premises were identified in that letter-agreement as "The Meadows": "The Meadows will be operated in accordance with its present use only." There is nary a word or any indication of the purchase price being predicated upon the number of acres.

Kollel had contracted, essentially contemporaneously with the subject contract, to purchase two adjoining parcels of properties from third parties. One of such properties was purchased from Naim and Fahrije Saiti, in which transaction a deed to Kollel was executed on June 23, 2004. (Exh G). The second of such properties was purchased from Nazmi Havolli and Shpresa Havolli, in which transaction a deed to Kollel was also executed on June 23, 2004. (Exh H).

11

It was only after Kollel closed title to these two parcels, and had been operating the subject premises for a month, when on June 28, 2004, Kollel ordered surveys of all three properties – for the very first time. (Exh I).

Accordingly, Kollel's claim that the subject purchase was predicated upon misrepresentation of the quantity of acres to be sold is frivolous. The subject contract included a specific disclaimer by the purchaser of any reliance upon any representation as to acreage. The property was intended to be, and was contracted to be, purchased as The Meadow Resort Hotel. Kollel closed title to the purchase of two adjoining properties without obtaining a survey. Only then did Kollel order a survey of the subject premises - - only after it obtained a contract extension, only after it had been in possession of the property, and only after it had operated the subject premises for a month thereafter. The subject contract involved a purchase in bulk, and not by acreage. Kollel has no actionable claim predicated upon misrepresentation of quantity of acres to be sold. *Miesner v. Slaughter, supra.*

## POINT IV

**HAVING ADJOURNED THE ORIGINALLY SCHEDULED CLOSING, AND HAVING TAKEN POSSESSION OF THE PREMISES FOR FOUR MONTHS BEFORE OBTAINING A SURVEY, KOLLEL'S "DELAY IN DOING SO RENDERS ITS RELIANCE ON THE DEFENDANTS' ALLEGED MISREPRESENTATIONS UNJUSTIFIED".**

*Parkway Woods v. Petco Enterprises,* 201 AD2d 713,
608 NYS2d 314 (2nd Dept 1994)

As previously shown, Kollel requested and was granted a closing adjournment from June 1 to September 27, 2005, during which time it took possession of, and operated the subject premises. (Exh C). On September 27, a further closing adjournment

was agreed to. (Exh E). On September 28, 2004, five months after signing the contract, Kollel obtained a survey indicating that the property consisted of 60 acres instead of 77 acres.

In *Point III*, *supra*, Kollel's delay in ordering the survey, and its non-reliance thereon, are fully documented.

This delay renders Kollel's reliance on the alleged misrepresentation unjustified, and is insufficient to defeat this summary judgment motion. *Parkway Woods v. Petco Enterprises*, *supra*.

### E. CONCLUSION

The documentary evidence in this case consisting of documents executed by the defendant itself conclusively establish that

> (a) Kollel had the means available to him of knowing, by the exercise of ordinary intelligence, the truth concerning the acreage of the subject premises. Having failed to make use of such means, Kollel cannot be heard to complain that it was induced to enter into the purchase contract by misrepresentation.
>
> (b) Assuming that Helen-May's principal, Griffin, made oral misrepresentations as to the number of acres to be conveyed, specific disclaimers contained within the agreement provide an effective defense against allegations in the complaint which assert that the agreement was executed in reliance upon oral misrepresentations.
>
> Indeed, the contract contained a specific disclaimer by the plaintiff of any representation as to the quantity of acreage constituting the subject premises.
>
> (c) The contract in this case provides for purchase of a resort hotel in bulk, and not by acreage. Accordingly, no credit for any deficiency in acreage should be allowed in any event.

    (d)  Having adjourned the originally scheduled closing, and having taken possession of the premises for four months before obtaining a survey, Kollel's "delay in doing so renders its reliance on the defendants' alleged misrepresentations unjustified".

  The defendant having shown that there is no material triable issue as to one or more or all of these defenses, it is entitled to a summary judgment dismissing the complaint.

Dated:  Liberty, New York
    June 1, 2005

               ORSECK LAW OFFICES
               By:  /s/  Gerald Orseck
                 Gerald Orseck (GO 9913)
               Attorneys for Defendant
               1924 State Route 52, PO Box 469
               Liberty, New York  12754
               (845) 292-5800