```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2

 3                                      .
 4    IN RE:                            .   Case No. 04-16410 (CB-SMB)
                                        .
 5    KOLLEL MATEH EFRAIM, LLC,         .   New York, New York
                                        .   Tuesday, May 22, 2007
 6                      Debtor.         .   10:50 a.m.
      . . . . . . . . . . . . . . . .
 7

 8
                            TRANSCRIPT OF MOTIONS
 9              BEFORE THE HONORABLE STUART M. BERNSTEIN
                    CHIEF UNITED STATES BANKRUPTCY JUDGE
10
      APPEARANCES:
11
      For the Debtor:              Scott Krinsky, Esq.
12                                 BACKENROTH, FRANKEL &
                                     KRINSKY, LLP
13                                 489 Fifth Avenue
                                   New York, New York 10017
14                                 (212) 593-1100

15    For Helen-May Holdings, LLC: David Carlebach, Esq.
                                   LAW OFFICES OF DAVID CARLEBACH
16                                 40 Exchange Place
                                   New York, New York 10005
17                                 (212) 785-3041

18

19    Audio Operator:             Electronically Recorded
                                   by Court Personnel
20
      Transcription Company:      Rand Transcript Service, Inc.
21                                 80 Broad Street, Fifth Floor
                                   New York, New York 10004
22                                 (212) 504-2919
                                   www.randtranscript.com
23

24    Proceedings recorded by electronic sound recording, transcript
      produced by transcription service.
25
```

1      (Proceedings commence at 10:50 a.m.)

2           THE COURT:  Okay.  <u>Kollel Mateh</u>.

3           MR. CARLEBACH:  Good morning, Your Honor.

4           THE COURT:  Good morning.

5           MR. CARLEBACH:  David Carlebach, representing credit

6    Helen-May Holdings.

7           I guess the first thing we should address is the order

8    to show cause.

9           THE COURT:  Okay.

10           MR. CARLEBACH:  Debtor, in their response papers, have

11    essentially consented to the prong of the motion seeking a

12    lifting of the stay, which, I guess, is good news in a sense.

13    But what we have put in our reply is that, you know, similar to

14    the rejection of a lease, the Code provides for something

15    called an immediately surrender of the premises to the

16    landlord.

17           I think that in this particular situation, it's

18    analogous to that, and it's just absolutely vital.  I mean,

19    it's clear from the advertisement that I appended to -- and I

20    asked the Court to trust my translation, which I will represent

21    is ninety-eight percent accurate.

22           THE COURT:  What about the other two?

23           MR. CARLEBACH:  In other words, I'm just leaving --

24    I'm leaving a two-percent margin for error, only because

25    somebody --

1    THE COURT:  Pretty confident, huh?

2    MR. CARLEBACH:  What?

3    THE COURT:  That's a lot of confidence.

4    MR. CARLEBACH:  Yes.  No, I -- and it's clear what the

5    debtors' intention is.  The debtors' intention -- they agreed

6    to a lifting of the stay.  To now engage in scare tactics in

7    the Orthodox Jewish Community to try to spook any potential

8    buyer, and, most importantly, that they can live in this

9    property rent free over the summer.

10    The problem -- the immediate problem of a potential

11    buyer is that the buyer -- that a potential buyer will force

12    them to leave.  And, you know, it's their intention to just

13    keep freeloading.  And that's essentially been the long and

14    short of this entire case.  And it's just -- in equitable.  And

15    I think there's many different ways you can -- as part of the

16    contempt prong that we've asked for, which they have now

17    essentially pleaded poverty --

18    THE COURT:  Well, Your Honor, I would have to have a

19    hearing on that.  I can't hold somebody in contempt of they

20    say, I can't afford to pay.  There are obviously other

21    remedies.  But --

22    MR. CARLEBACH:  I understand.  So even -- I think even

23    without contempt, I think there's enough latitude in the Code,

24    especially based on the immediate surrender provisions of

25    Section 365 by rejection of a lease, which allow you to order

1   an immediate surrender of the premises, I mean, this is really

2   just --

3         THE COURT:  And what happens if they don't surrender

4   it?  U.S. Marshals have to go up there and take the property?

5         MR. CARLEBACH:  That's exactly what we're going to do,

6   Judge.

7         THE COURT:  Okay.

8         MR. CARLEBACH:  At whatever cost so that we can show

9   the property and do what we need to do.  And, you know, if we

10  can get that, I think we've come a long way.

11        In terms of the administrative expense status

12  argument, you know, where --

13        THE COURT:  You know, it's unnecessary.  You already

14  have an order directing them to make a payment.

15        MR. CARLEBACH:  I agree.  And, I mean, that's -- I

16  think that's really what's most important today is that the

17  Court enter that type of an order so that we can move forward

18  with this, as opposed to just, you know, going to stage two of

19  delaying our -- my client's rights from being exercised of, you

20  know, for the past three years.

21        THE COURT:  Okay.

22        MR. KRINSKY:  Your Honor, Scott Krinsky, Backenroth

23  Frankel, for the debtor.

24        The order to show cause says nothing in the papers,

25  the initial papers, about this sort of relief.  They just

1    wanted a lifting of the stay.

2            THE COURT:  Well, but you're there and you're not

3    paying for it.  What's he supposed to do?

4            MR. KRINSKY:  He's talking about something completely

5    different.  He's talking about a surrender of the property.

6            We consent to the lifting of the stay.  We don't

7    consent to a surrender of the property.  There's nothing in the

8    initial papers.  Your Honor wrote intelligent --

9            THE COURT:  They're not asking for your consent to the

10    surrender.  He's asking for an order directing you to vacate

11    the property.

12            MR. KRINSKY:  Right.  But Your Honor wrote intelligent

13    that you can't raise new issues in reply papers.  That's

14    basically what they did.  Those reply papers were filed last

15    night at twelve o'clock for the very first time.

16            If Your Honor even considers that -- and, also, in

17    your --

18            THE COURT:  So should I adjourn this for ten days and

19    then consider it?

20            MR. KRINSKY:  Well, Your Honor, in your initial order

21    to show cause, you did not allow for reply papers.  So, in

22    essence, there's a Court order which doesn't even consider

23    that.

24            THE COURT:  Okay.

25            MR. CARLEBACH:  Your Honor, and reply papers are

1  typically not allowed, unless there are new issues raised.

2  And, like I said, this advertisement put in by the debtor is on

3  the very day that the order to show cause was served.  On May

4  16th, the day that the debtors' counsel received the order to

5  show cause pursuant to the order, on that very same day, they

6  take out an advertisement in the community saying, don't go out

7  and -- anybody who wants to purchase the property call us,

8  because we're going to lose money.

9          So, clearly, their strategy of consenting to the lift

10  stay, but scaring off the community from -- and where they put

11  into place a mechanism, that's sort of new to us as well, and I

12  think it's appropriate to bring it to the Court's attention

13  under the circumstances.

14          And, you know, every day that goes by is just another

15  day that they're living in this property rent free.  And it's

16  just inequitable.  It's not something that this Court should

17  countenance.

18          MR. KRINSKY:  Your Honor, a couple of things.  One, we

19  told them months ago we'd agree to the lifting of the stay.  So

20  that's nothing new.  It's not in the papers, but just so you

21  know in terms of background.

22          Second thing is that all that advertisement says is

23  that we have an interest in the property, which we legally do

24  have an interest in the property.  We don't know how they're

25  marketing the property.  They may very well be saying we have

1    no interest in the property.

2          THE COURT:  But how can you consent to a lifting of

3    the automatic stay so they can essentially evict you, and still

4    argue that you have an interest in the property?  What's the

5    interest?

6          MR. KRINSKY:  Our interest is the same.  We're

7    basically saying, they want to change the playing field, which

8    is fine.  We consent to them changing the playing field.

9    That's --

10          THE COURT:  So you're saying they should go to State

11    Court now, and you'll fight them out on the merits?

12          MR. KRINSKY:  I don't know if we will or we won't.

13    But, for now, we don't want to bother the Court.  We will

14    consent to the lifting of the stay for them to litigate this

15    issue in State Court, which is what we assumed the purpose of

16    the lift-stay motion.

17          Again, the initial papers only say the lifting of the

18    stay.  It was assumed by anyone reading that, that that means

19    we will lift the stay to litigate this issue in State Court.

20          THE COURT:  That's what lifting the stay normally

21    means.

22          MR. CARLEBACH:  I understand, Judge.  And I'm asking

23    the -- but, at the same time, as I said, by rejection of a

24    lease in Bankruptcy Court, the Code clearly uses the language,

25    "immediate surrender."

1          THE COURT:  But this isn't the rejection of a lease.

2    This is a relief from stay motion.

3          MR. CARLEBACH:  I understand.

4          THE COURT:  I don't even remember anymore what's the

5    basis of their possession of the property.  But, you know,

6    normally, when you make a motion for relief from stay, it's to

7    proceed in another court because you can always proceed in this

8    court without a motion for relief from the stay.

9          And what you're really doing is you're converting this

10   to a motion to convict them.

11         MR. CARLEBACH:  Again, Judge, you know, like I said,

12   there are additional prongs to this motion.  I know the Court

13   doesn't necessarily want to go into the contempt today.  But --

14         THE COURT:  Well, there's a factual issue.  If you

15   want to proceed with that, I'll schedule a hearing.  They're

16   saying they don't have the money to pay it.

17         MR. CARLEBACH:  Well, what I'm saying is that --

18         THE COURT:  Don't you have a judgment?

19         MR. CARLEBACH:  Judgment on what?

20         THE COURT:  On the unpaid -- what do you call it?  On

21   the unpaid --

22         MR. CARLEBACH:  Adequate protection amount?

23         THE COURT:  Yeah.

24         MR. CARLEBACH:  We don't have a judgment.  We just

25   have an order that --

1          THE COURT:  I thought I gave you a -- I thought I

2    entered a money judgment.

3          MR. CARLEBACH:  No.  Well, that's one of the relief

4    we're seeking, Judge, is the entry of a judgment.

5          THE COURT:  I thought I did that for the past-due

6    amounts.

7          MR. CARLEBACH:  I don't believe so, Your Honor.

8          MR. KRINSKY:  Your Honor, you gave us a certain period

9    of time to pay the past-due amounts.

10          MR. CARLEBACH:  Yeah.  There is another payment coming

11    through -- coming due at the end of this week for an additional

12    205 -- for $210,000.

13          THE COURT:  Who are the other creditors in this case?

14          MR. KRINSKY:  Your Honor, off the top of my head, I

15    know there were various other creditors; I think a

16    communications entity, SOS, I don't have the petition in front

17    of me.  But there were other creditor claims.

18          MR. CARLEBACH:  There are about four or five other

19    creditors, Judge.  There was a refrigeration, communications,

20    various trade creditors that apparently put money into the

21    debtor pre-petition in order to --

22          THE COURT:  What's going to happen in this case?

23          MR. CARLEBACH:  Well, what we'd like to do, Judge, and

24    this goes towards the status conference, the debtor has a --

25    the debtor asked for more time at the last hearing, status

1    conference, I forget which one, to put in a plan.  The Court

2    gave them until May 15th.  They didn't put in a plan.

3          We would like to put in a plan, Your Honor, Judge,

4    which we will do our -- there are --

5          THE COURT:  There's a lot of administrative debt in

6    this case.  They ran up a large fee, I'm sure, litigating that

7    Orseck issue.

8          MR. CARLEBACH:  Well, Judge, there are -- we also

9    believe we have at least a three-million-dollar administrative

10   claim based on the $1,500 a day.

11         THE COURT:  Okay.  But you can deal with your own

12   administrative claim in your plan by deferring it.  But you

13   have to pay the administrative claims in full on the effective

14   date in order to confirm, which means, essentially, you're

15   going to have to pay their legal fees, whatever the allowed

16   amount of their legal fees turn out to be.  But I'm sure they

17   ran up a lot of money litigating with Orseck.  And that wasn't

18   their fault.

19         MR. CARLEBACH:  Judge, there may be other avenues of

20   recovery in this case.  There are alter-ego theories that we'd

21   like to pursue.  And, you know, I think we'd like to give it a

22   shot, certainly.

23         There are other assets in the case.

24         THE COURT:  I understand that.  But if you file a plan

25   and the plan retains for the debtor, or says that the debtor is

1    going to assert these claims in order to recover money for the

2    creditors, you still have to pay their legal fee on the

3    effective date because that's what it's going to take to

4    confirm a plan.  You have to pay all administrative claims, or

5    at least reserve for them on the effective date.  And that's

6    the obstacle you may have in proposing a plan.

7         I mean, I think, and I suggested this a couple of

8    months ago, is the case be dismissed and you just pursue them.

9    You're going to have a money judgment, which you can always

10   pursue on an alter-ego theory.

11        The case is -- you know, the case isn't going anywhere

12   in bankruptcy.  They're not going to confirm a plan, from what

13   I can tell.  And your alternatives are to dismiss the case,

14   convert the case.  Obviously, you can file your own plan, but

15   it sounds like it's going to take a lot of money to confirm the

16   case on the effective date.

17        So I think you have to really think about an end game

18   strategy for this case; otherwise, we're just going to kind of

19   bounce along over the next couple of years with these issues

20   that have to be decided.

21        MR. CARLEBACH:  Well, one of the issues that are out

22   there, which we've discussed with the Court before, is the

23   motion for summary judgment, which we had wanted that the Court

24   determine that.  And one of my purposes --

25        THE COURT:  Is that the one with the tax map

1    designation?

2          MR. CARLEBACH:  The tax map designation, assignability

3    of the fraud.  See, the problem is, Judge, these are --

4          THE COURT:  I'll determine that.  I'm just -- that's

5    just another issue that's not going to get you where you want

6    to be, anyway.

7          MR. CARLEBACH:  Well, in the sense that -- to the

8    extent that they want to go into State Court and play with this

9    thing further, I think it's very important that we have those

10   determinations right here, as opposed to them starting from the

11   ground up in State Court with a new State Court judge, and just

12   raising all these issues and dragging this thing out

13   interminably.

14          So one of the things I wanted to ask for, the Court is

15   -- there was already a motion for summary judgment made, or

16   Local Rule -- there were fifty-six statements were put in.

17   There were, really, I think, three to four issues which were

18   isolated that the Court, on July 20th, 2005, had indicated

19   further briefing.  And there was, again, the assignability of

20   the fraud issue was only raised on reply.

21          One of the things I'd like to do today is set down a

22   briefing schedule where we can submit our additional briefs and

23   the Court will essentially deem those briefs as being initial

24   briefs, and curing any deficiency, any pleading deficiency of

25   having had them originally raised --

1          THE COURT:  So why don't you just make the motion all

2    over?  That's really what you're saying.

3          MR. CARLEBACH:  Well, I could do that --

4          THE COURT:  You can use what you have, and it's not

5    going to affect the timing of the motion.

6          MR. CARLEBACH:  I had thought that the Court had sort

7    of wanted to save us that.  But that's fine.

8          THE COURT:  Well, what's involved in renewing the

9    motion?  It's the same factual material.

10          MR. CARLEBACH:  That's fine.  That's fine.

11          THE COURT:  And you're talking about briefing it.  So

12    you can do that.

13          MR. CARLEBACH:  We'll make that motion.

14          And I would also like to submit a judgment to the

15    Court on both the adequate protection payment that they've

16    missed for May, and by the end of the week, they're going to be

17    in default on the --

18          THE COURT:  Well, okay.  Are you going to submit a

19    judgment every month?

20          MR. CARLEBACH:  Well, again, on the 13,000 -- well,

21    there's a two-hundred-thousand-dollar payment coming due on May

22    27th, which they've clearly indicated they're not making.

23          MR. KRINSKY:  Yeah, but that gets kicked to the 29th,

24    just so you know, Your Honor.

25          THE COURT:  All right.

1          MR. CARLEBACH:  And -- to the 29th.  And I think I'll

2    wait until the 29th comes and goes.  If there's a check -- if

3    we get a check in hand, I'll be happy not to submit that,

4    Judge.

5          THE COURT:  But don't you have a judgment already?  Or

6    you can submit a judgment for a few hundred thousand dollars at

7    this point based on the -- what was ordered on July 20th, 2005.

8    I thought I had --

9          MR. KRINSKY:  Right.  And you subsequently entered an

10   order on April 25th, which basically gave us -- basically gave

11   us, I think, thirty days to come up with that bigger sum of

12   money.

13         THE COURT:  Did it say what happened if you didn't?

14         MR. KRINSKY:  It did not.

15         THE COURT:  Is there any reason why they shouldn't be

16   able to enter a judgment for that amount?

17         MR. KRINSKY:  I think the order in and of itself is

18   sufficient.  I don't see any reason to --

19         THE COURT:  Well, but they want to file a judgment.

20   It will be a lien on the property to the extent you assert an

21   interest in it and try and sell it.  I mean, there are a lot of

22   reasons why they would want to have a judgment to file up in

23   the County.

24         MR. KRINSKY:  I'm not sure they don't have -- get to

25   the same place with the order.

1          THE COURT:  So you have no objection, since they have

2     it already.  Is that what you're saying?

3          MR. KRINSKY:  Well, we -- it's speculative and

4     premature at this point.  Our time to comply doesn't run until

5     May 29th.

6          THE COURT:  All right.  Why don't you do this?  If

7     they don't pay you, settle a proposed judgment on ten days'

8     notice certifying that they haven't paid.  And if you have any

9     objections to the entry of the judgment, we can take care of

10    that.

11         Let me deal with today's motions.  The portion of the

12    motion that seeks an administrative claim doesn't really get us

13    anywhere.  First of all, there's an existing order which

14    requires them to make a payment every month.  It's an adequate

15    protection payment.

16         In addition, if it were purely an administrative

17    claim, I'd say, well, they'll pay you at the time of the

18    confirmation.  So I'm going to deny that motion.  Really, you

19    have that relief already in the form of an adequate protection

20    payment.

21         With respect to the contempt, if you want to pursue

22    that, I'll have to schedule a hearing because they're saying

23    they're unable to pay.  But I'll give you a chance to think

24    about that and discuss it with your clients.

25         MR. CARLEBACH:  Okay.

1        THE COURT:  With respect to the relief from stay

2   motion, I'll grant the relief to stay on consent, but Mr.

3   Krinsky is right.  Your order didn't -- your motion didn't

4   request that I direct them to vacate the property.  And I'm not

5   so sure that that's an appropriate relief in the context of a

6   relief-from-stay motion.  Generally, a relief-from-stay motion

7   sends the parties back to their remedies in another court.  As

8   I said, if you think there's a basis under bankruptcy law to

9   cause them to vacate the property, you don't have to make a

10  relief-from-stay motion.  You just bring a proceeding to

11  require them to vacate the property.  I don't know if there is

12  such a basis to do that.

13        With respect to the summary judgment motion, it

14  probably makes sense to renew it at this point.  You want to

15  add additional briefing, anyway, so you can just do it all at

16  one time.

17        My recollection is that, I think it's Fox v.

18  Rothschild is the Appellate Division case --

19        MR. KRINSKY:  Well, again, Your Honor, those are

20  issues --

21        THE COURT:  -- and then there's a Second Circuit case

22  which cites it with approval which has a French title, Bank

23  something or other, which basically says that in the absence of

24  some explicit agreement, the fraud claim doesn't go to the

25  transferee.  But, you know, if you want to brief that issue, go

1    ahead.

2         MR. CARLEBACH:  Okay.

3         THE COURT:  All right?  So you can -- what do you want

4    to do with your contempt?  Do you want to think about it?

5         MR. CARLEBACH:  I want to think about the contempt,

6    yes.

7         THE COURT:  All right.  If you want to put that on for

8    a hearing, let chambers know and we'll have a telephonic

9    conference to schedule a hearing on that.

10         You can settle an order granting relief from the

11    automatic stay denying the motion with respect to the

12    administrative claim for the reasons stated on the record, and

13    just make your motion for summary judgment.  Make it promptly,

14    because I think this case is on a short string.

15         MR. KRINSKY:  Your Honor, are we getting to a briefing

16    schedule on summary judgment today, or is that a --

17         MR. CARLEBACH:  Well, I'll make the motion, and --

18         THE COURT:  Why don't you discuss it?  I think most of

19    this is briefed.

20         MR. KRINSKY:  I would not necessarily agree with that,

21    Your Honor.

22         THE COURT:  Okay.  And, as I said, you've got to think

23    about, you know, where you're going with this case.

24         MR. CARLEBACH:  Okay.  And if there is -- I would like

25    to look at the issue of if there is a basis under the

1  Bankruptcy Code for Your Honor to order an immediate surrender,

2  I'd like to renew that.

3         THE COURT:  You can always renew that.

4         MR. CARLEBACH:  Yeah.  Okay.

5         THE COURT:  I just don't think that the relief-from-

6  stay motion does that.

7         MR. CARLEBACH:  Okay.

8         THE COURT:  Okay?

9         MR. CARLEBACH:  Thank you.

10         MR. KRINSKY:  Your Honor, thank you for your time.

11         THE COURT:  Thanks.  Let me give you another date for

12  the status conference.  I'm sure I'll see you before then, but

13  how about June 26th?

14         MR. CARLEBACH:   I think I have an argument in the

15  Second Circuit on the 26th.

16         THE COURT:  Why don't you do this?  Are you going to

17  make your motion soon?

18         MR. CARLEBACH:  Yes.

19         THE COURT:  All right.  Why don't -- whatever return

20  date you select for the motion, ask my deputy to adjourn the

21  status conference to that date also.

22         MR. CARLEBACH:  Okay.

23         THE COURT:  Okay?

24         MR. KRINSKY:  Your Honor, thank you.

25         THE COURT:  Okay, thanks.

1          (Proceedings concluded at 11:08 a.m.)

2                              * * * * *

3                          CERTIFICATION

4          I certify that the foregoing is a correct transcript

5    from the electronic sound recording of the proceedings in the

6    above-entitled matter to the best of my knowledge and ability.

7

8    _____          June 19, 2007

9    Cathryn Lynch, NJ CERT 565
     Certified Court Transcriptionist
10   For Rand Transcript Service, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25