**SCHER & SCHER, P.C.** *Attorneys at Law*
111 GREAT NECK ROAD • P. O. BOX 376 • GREAT NECK, N.Y. 11021 • (516) 482-1777 • (718) 631-2000

ROBERT A. SCHER
DANIEL J. SCHER*

TELECOPIER
(516) 829-3198

*ADMITTED N.Y. AND N.J. BAR

Via FAX

June 3, 2004

Michael J. Halberstam, Esq.
Laufer & Halberstam, LLP
39 Broadway, Suite 1440
New York, NY 10006

Re: Sale of The Meadows Resort
    1141 County Road 114, Fosterdale, NY

Dear Mr. Halberstam:

We suggest that we agree as to the terms and conditions of your client's occupancy of the Meadows before we enter into a more formal occupancy agreement. That should make the drafting easier.

Our client's requirements:

The closing of title shall take place, on or before, September 27, 2004, time is of the essence as to your client only. We also must agree that in all title as appears in the current search is deemed marketable and acceptable. Purchaser shall accept title subject to any title issues which are the direct result of the Purchasers acts, actions or conduct. All issues surrounding the condition of the property which may be raised at the closing are hereby waived and may not be raised in the future. In other words, if all of the structures collapse tomorrow of some hidden defects or otherwise, tough luck to your client.

The Meadows will be operated in accordance with its present use only and must obtain all permit, licenses and permission required to operate under their own name. (Which must be disclosed to us). We must see, and approve, all permit applications in advance (through my office).

They must maintain the premises in good order and may not make improvements that require the approval of any governmental agency. A list of all proposed improvements Purchaser proposes must be furnished to Seller and its attorney (by FAX) in writing no less than three (3) days prior to the commencement of such work for Seller's

SCHER & SCHER, P.C.

Michael J. Halberstam, Esq.
June 3, 2004
Page 2

approval. Seller may withhold approval for such improvements for any reason, or no reason at all. In the event that Seller does not object and decline to approve such improvement within seventy-two (72) hours of receipt of the notice, Purchaser may proceed with the improvement. Further, Purchaser may not operate in any manner that requires any governmental approval without first obtaining same.

All items of personal property excluded from the sale must be placed in storage at the Meadows and safeguarded by Purchaser.

All adjustments are, and will be, as of June 1, 2004.

Your client is responsible for paying our client all of their carrying charges, including, but not limited to:

    Mortgage:         $9,750.00
    Insurance:        $2,500.00
  Interest on our
  clients credit
  card debt:'         $3,500.00

With the increase of the liability coverage, we expect the insurance premium to increase. Your client will pay any increases as a result of the increased coverage or such increase which may be the result of their use of the premises, if any.

Your clients will be responsible for the payment of all utilities, including, telephone, oil, propane, etc. and other ongoing expenses of operating the Meadows.

Electric service will remain in our client's name and our client will be responsible for all electrical service through May 31, 2004 as calculated based upon the latest bills (without obtaining an actual reading.) You client will advance the amount of $1,500.00 and we will adjust based upon the actual bills in arrears.

Your client will be responsible for any Brokers' commission or claim made in connection with the Occupancy Agreement, if any.

000375

**SCHER & SCHER, P.C.**

Michael J. Halberstam, Esq.
June 3, 2004
Page 3

Your client will pay our legal fee in the amount of $3,000.00 which is incidental to the occupancy agreement and any ongoing fees at a rate of $250.00 per hour for additional work up to the closing (not inclosing the closing itself).

Your client will pay our client, Irene Griffin, a consulting fee of $1,000.00 per week, or any portion thereof, for such time as our client may, or may not, be required to assist them in any way in connection with the operation of the Meadows.

Your client will pay Wolfgang and Susan Blanke directly for such work as the may perform at the Meadows and agreed to indemnify and hold our clients harmless in the event any issues surrounding that employment arise. Your client agrees that it shall be solely responsible for the relationship to them regarding benefits, worker's comp coverage, etc., if any. We must be made aware of the arrangements.

The downpayment will be increased by an additional $40,000.00 to $140,000 which our clients agree represent the new liquidated damage sum under the Contract. That money may be released to our client or as they so direct at any time after the execution of this letter agreement.

In the event that the Purchaser fails to close on or before September 27, 2004, for each day the continue to occupy the premises they shall become liable to the Seller for the additional sum of $1,500.00 which will continue to accrue until they quit the premises and remove all of their belongings. No escrow will be held therefor, however, that debt shall accrue as against the Purchaser and unless Purchaser pays the said amount on an ongoing basis, Seller may proceed in any lawful manner to collect such additional sums.

All payments under this agreement must be paid on the first of the month or within five (5) days or receipt by Purchaser. Any default by Purchaser under the Occupancy Agreement shall represent a default under the Contract and